First case of the morning, call 219-0131. Mark S. Tractman v. Laurel v. Gabel. On behalf of Mr. Tractman, Mr. Roger C. Gabel. On behalf of Ms. Gabel, Mr. Howard M. Tomlin. Mr. Gabel. May it please the court, I'm Roger Gabel, after all this. Sorry, Mr. Gabel. Lots of people do that. Mr. Gabel, we usually have you put the name up here. I would have gotten it right, but it's not up here, so thank you, Bob. Go ahead. In any event, here I am, and I do have a lot to say about the case that I hope will be of interest to your honors. When I was preparing for the case, literally yesterday, I decided to look at the Ward case one last time to see if there had been any citations. What I found was an article in the Illinois Bar General. Now, this isn't authority, but the last paragraph of the article just struck me as extremely interesting. And it says, after discussing the Hudson problem, if an attorney encounters a situation in which res judicata may bar a refiled action, then he or she should take care to draft a dismissal order that explicitly reserves the right to refile. That's what I did. That's what happened in this case. And yet, here we are this morning notwithstanding. Now, this is not a simple set of facts, and it is not a simple question, again, that the Ward case makes clear to determine when res judicata should bar something. But in this case, what happened was, the irrelevant part, that back in September of a long time ago, the court entered into order dismissing the original complaint that was filed. With prejudice. With prejudice, but with leave to file an amended complaint. Well, no. With respect to count three? It was just a blanket leave to refile an amended complaint, period. And in fact, we filed an amended complaint, which included the count three that had been dismissed before. At that time, I thought more as a placeholder in case it ever went up on appeal. Isn't that the problem? Just to ask you a poignant question. You seem to be saying that, yes, generally, the voluntary dismissal order with leave to refile is not going to be a final judgment. But here, the voluntary dismissal order is not the basis for finding res judicata. It was the fact that count three, from the same set of operative facts, was dismissed. Okay? That was a final order. Was it not on count three? No, it was not, because we were also given leave to file an amended complaint. Not on count three? An amended complaint, period. There was no limitation that said we couldn't refile on count three. Well, count three stood, though. It was not even addressed, was it? Count three was refiled after that. And count three in March of the following year was dismissed without prejudice. We voluntarily withdrew it at that point. So it was not on our radar at all. This is the act. This Court affirmed the dismissal of count three with prejudice. Yes, it did. That's a final order. That's a final judgment. No, that's not a final judgment either, because it's an interlocutory order that sends us back here for further proceedings. If Ward and the other cases that followed Hudson in interpreting what's going on mean anything, it means that the Court can't simply look at a mechanical formulation of, is there this language, with prejudice, and therefore we're into the discussion. The Court must look at the substance of what was going on. I know, but I think we're getting off on a tangent here. Tell us why, when a count is dismissed, it's appealed. We affirm the dismissal on appeal. Tell us why that's not a final judgment on that count. Because you also remanded for further proceedings. On count three? On the case. We're sidestepping it. Tell us why count three was not final. We didn't remand it for reconsideration on three. So that's what we're getting hung up on. Why was count three not final when we affirmed on appeal and we didn't remand on that count? Why doesn't it stand as final? I understand your logic. But I also listened yesterday to the appellate court, not the appellate, the Supreme Court, and listening to the argument, one of the things that the judges said struck me, which is that they struggled, too, with this problem with the minute that magic language, with prejudice, appears, what does that mean? Does that mean there's an end to it? What they said, what I heard them say, was that with prejudice has actually different meanings. One meaning is a meaning that the judges use in reality as a case management purpose to say to the parties, look, I don't want to hear about that anymore. However, I'm not saying you have no claims here and your clients can't go forward. And if that's the case, then that with prejudice language doesn't have this automatic effect. With regard to the effect that that may have had, you could have filed a petition for re-hearing to clarify to the court, to this court, that we were in error. You did not do so, correct? That's correct. Okay. So summarize exactly why you think it was not a final order. All right. I think it's not a final order because of the context of when it happened and how it happened. However, there's an alternative way to analyze this, which deals with the question of whether, in fact, that was the same cause of action that was dismissed. You can also come at this from the point of view of looking at count three, which was a count, asking the court to determine that the trust was invalid because the person who executed the trust was incompetent. That was an action that was owned by the beneficiaries to the trust. Mark Trachman was never a beneficiary of the trust. Mark Trachman never had standing to bring that action. The court had no jurisdiction to deal with the Trachman claims with regard to the trust because he wasn't a proper party. That's an exception to the Rule 273 effects that's lined in the rule itself. So that's an alternative reason that the court could apply that logic to say, no, there is no risk to the contractor. There is no bar because of this interim order, what I characterize as a management order that guides the parties to spend their time in an appropriate area. Are you aware of the fact that Illinois law uses a transactional test to determine whether the causes of actions are identical or raised due to counterpurposes, basically meaning do the causes of action, even though it's different theories, do they arise out of the same set of operative facts? Here this all stems from the same factual allegations. I mean, we have a situation where the trust was created. Yes, there's different theories for relief. But it happened out of one set of operative facts, did it not? No, it did not. The right, the rights of beneficiaries to the trust, separate bundle of rights, separate set of facts that have nothing to do with the tort which we proceeded on and which we wish to still proceed on. The tort, the actions independent of anything that the mother here did or that the trust lawyers did to poison the well with respect to her brother. That is an independent action that stands by itself. It has nothing to do with what happened with the family and the trust. It's simply a matter of did she manage to convince her parents that there was something terribly wrong with the way that her brother was and take away what was, until the day his mother died, a reasonable expectation that he would receive some part of the estate. But the core of operative facts really has to do, in a general sense, with his exclusion from any inheritance. I mean, that's, I think, what Justice Hudson was talking about with the transactional test and the approach that Illinois takes. You're talking, I think, more about different theories rather than the core operative facts here to exclude him from any inheritance. I understand the logic. I don't think it should be applied here because of the facts of this case. I keep going back to what the last order was that was entered before we came here. Really, with the trial test, it was we were given permission to take a voluntary non-suit. And it was without prejudice. And, most importantly, it was with leave to refile. We not unreasonably expected that we would be able to refile the action and go forward and finish what we had started. Well, your position at the time might have been very reasonable, but there was already a time bomb operating in the background here. Somebody forgot about the dismissal of count three being a final judgment, even though you did everything you could have with those counts. Everybody on this side completely forgot about count three. Well, and that's your problem. We didn't raise it in the court. These people were gratuitously to help us out by entering the order that surprised me when I saw the appellate opinion because I thought that that wouldn't be dealt with at all because we didn't deal with it at all. You can sum up, Mr. Gold. I was just going to give you my sum up. My sum up is that Ward says a court should ask whether any order dismissing any of the complaints permitted the action to firmly establish the party's rights as to any cause of action. That broad test isn't an issue. That broad test and the logic of the Ward decision is why I submit to the court that the order dismissing it should be reversed. I appreciate your time. Thank you very much. Thank you, Mr. Gold. Mr. Cole. Good morning, Your Honor. I'm Howard Cohn. I represent the defendant, F. Lee, of Laurel, Michella. Your Honor, it's our position that the judgment of the trial court dismissing what I'm going to refer to as Track 2, the second lawsuit, based on the doctrine of race judicata, should be affirmed by this court. This morning, I'd like to briefly discuss both the Ryan and the Hudson decisions and what's happened in the 23 years since Ryan came out and the two more recent Supreme Court decisions that have come down against Ward and Richter. But before I get there, just to clarify the procedural backdrop of this case, Trackman 1 was originally filed in 2013. The original complaint was filed when a plaintiff came in and sought leave of the court to amend his complaint and was granted, and then filed a first and second amended complaint, and both times he withdrew it and was granted leave to amend. The plaintiff filed a third amended complaint. We filed a 2615 motion to dismiss. The court heard arguments and entered an order granting once again leave to amend. And then the plaintiff filed his fourth amended complaint. He again filed a 2615 motion, which was fully briefed and argued before the trial court. This time, something different happened. After argument, the court entered an order on September 5, 2014. It's in the appendix at 832, and that order reads in part, It is hereby ordered that the entire complaint is dismissed with prejudice. The entire complaint is dismissed with prejudice. And then it goes on to say that this is a final order that disposes of this case in its entirety. We couldn't have been more clear, maybe prescient is the word, because we didn't have the more recent decisions at the time, but that's the order that was drafted. At that point, the plaintiff had some choices to make. He could have filed a petition for re-hearing. He knew he had a final order, and he knew the time was ticking, and he had to do something. He could have gone back and tried to convince the trial judge to change his mind and reopen the case. So he could have filed a petition for re-hearing. He didn't do that. He had the opportunity to accept the final judgment of the court, and they could go on with their lives. The case was over. That was the second option. And the third option is he had a right to appeal the case within the time permitted by the rules. In fact, the plaintiff chose a fourth option. He accepted the judgment of the court with respect to the third count. He didn't appeal that count. He accepted that judgment. But he appealed counts one and two. Count three became a final judgment, but it became final and non-appealable. And, of course, within the 30-day period, the trial court loses jurisdiction. This is the key distinction between this case and the two recent Supreme Court cases where a final order was not entered. I'm going to address those in one minute. He then went on and appealed counts one and two to this court, and this court reversed the ruling of the court with respect to counts one and two, which, as Justice Hudson noted, affirmed the dismissal of count three. Count three was gone at that particular point. The plaintiff then returned to the trial court. He proceeded with three years of discovery and then filed another complaint, a two-count complaint. And then five days before trial, as the plaintiff has the right to do under the rules, he took a voluntary dismissal of the complaint. That was a voluntary dismissal of the remaining two counts. The third count was gone. That was not before the court at that point. Okay. That triggered all sorts of things under the Rhine and the Hudson decision, because when the plaintiff chose that that was the end of chapter one. A year later, the plaintiff decided to refile chapter two, which is the case that's before this court, and refiled this two-count complaint. At that point, we filed a motion to dismiss, and the basis of our motion to dismiss is that the court had made a final decision on count three. The principles of reis judicata are actions and claims that were considered or could have been considered under count three. And it was our position that the standard reis judicata was fully satisfied, and the trial court agreed and dismissed it. As a result of the preexisting dismissal of count three. As a result of the preexisting. He would have been right if count three had never been in the case. Normally, and naturally, if you take a voluntary dismissal without prejudice, there's not going to be a problem. Somehow count three was overlooked in the analysis. That's the basis for the reis judicata, correct? That's absolutely the basis. And as the Rhine decision says, that when a plaintiff splits his claim and then subsequently dismisses his claim, he runs the risk or the peril of a reis judicata ruling. And he should be aware of it. And notwithstanding the fact that the Illinois statute permitted to take a voluntary dismissal, that doesn't negate the fact that principles of reis judicata apply. And in fact, in the earlier decision in the Hudson case that was decided in about 2006 or 2008, in that case there was a five-year-old boy who had trouble breathing. They called the Chicago Fire Department. They delayed in responding. The boy passed away. The case was filed against the city of Chicago Fire Department. Count one was for want of willful, count two was for negligence. And then in that case, the court made a final decision on the negligence and dismissed the negligence and count two was prejudice. Five days before trial, the attorney handling the case died, and his daughter, who was also an attorney, came to court and filed a motion of voluntary dismissal, and she was granted, and then also refiled about a year later. And if there was a case where if you just looked at the equities itself, what happened there in the circumstances, but nevertheless, the Illinois Supreme Court ruled that the second case was fired, and they said it was based on the writing decision because the claims could have been litigated in the first case. The first case was the first case, the count was dismissed with prejudice, and you don't get two bites of the apple. The reis judicata applies not only to what was litigated but what could have been. What was or what could have been litigated, exactly. Now, I want to briefly address two recent Supreme Court cases. The Ward case that just came out in June of this year, and the Richter versus Prairie. Both of those cases made it very clear that the dismissal order, in that case also both encountered lawsuits, but in that case when one of the counts had been dismissed, it was dismissed with a leave to amend in the Richter case. And the courts in the Illinois Supreme Court stated that an order that dismisses a count from a complaint but grants the plaintiff leave to amend is not a final order. And a dismissal with leave to amend is consequently a dismissal without prejudice. You contrast that to our order where we say that this is a final order that disposes of this case in its entirety, and that this is a dismissal with prejudice. I think the test for the lawyers is you better make sure your order is clear and unequivocal or the courts may find ways to reopen the case. Our order is clear and unequivocal. And the interesting fact about this Richter case is the leave to amend order said that the plaintiff had leave to amend within 30 days. And so they argued before the court, well, nobody amended within 30 days, and therefore the order became final. Illinois Supreme Court said, no, no, no, no, no. We want you to make it expressly clear that the order is going to be a final order. We're not going to have an automatic final order rule here. That's kind of an interesting victim in the case in light of the Ward decision. And Ward was very similar. Once again, in Ward, the court ruled that there had been no final judgment, and therefore raised it due to comment, did not fire the refiling of the complaint. And it's really right on point in our case. It says a dismissal order is a final adjudication on the merits when the order specifies that it is with prejudice. And in the Ward case, none of the orders were entered with prejudice. Again, in our case, it is with prejudice. But there's some interesting victim in this case also that's kind of constructive. In the Richter case, the court said, we're not going to automatically read into the order that it becomes final after 30 days. And in this June case that the Supreme Court had again, they said, this is dictative, but it's kind of interesting. It says we declined to rule that the trial court undoes a dismissal with prejudice by granting a party the opportunity to replete. So just like there's not going to be an automatic final order, there's also not going to be an automatic undoing of an order to dismiss with prejudice. Once it's done, it's done. Or as we learned in law school, you get one bite of the apple of what they say. That's how my civil pro teacher said it many, many years ago. So I'm going to briefly turn to the second part of the analysis. And that's the doctrine of race, judicata, and when it applies, Justice Hudson is correct. It requires actions that were brought or could have been brought. In order for the doctrine of race, judicata to apply, there's three tests it must meet. Number one, you need a final order. I think I've amply demonstrated in this case that there's a final order. Number two, you have the same parties. Tractant 1 and Tractant 2 have the identical parties in both cases. That test is sort of beyond the doctrine. And number two, it has to arise out of the same transaction. And I think it may have been Justice Burchett that said, doesn't that mean the same operative facts? And that's exactly it. But let me just ask with respect to that. Why wasn't the plaintiff's mother's mental competence a distinct? Why wasn't it distinct factually and an independent claim from the other? It could have been in different pleadings. It could have been. But it wasn't in this particular case. If you take a look specifically at count three, the count that was dismissed in this complaint, multiple paragraphs are the same, correct? 111 paragraphs are identical. 111 paragraphs are identical. And then beyond the 120, although it's titled a claim of mental incompetence, paragraph 254 says, through Laurel Mitchell's tortuous conduct, false representations, and undue influence, defendant, it goes on and on. So it really restated and re-enumerated the same cause of action as in count one or two. I mean, they're so closely intertwined. Not unusual because I've litigated these cases. The undue influence cases and the lack of capacity cases are really sometimes two sides of the same coin because not only are you looking at the actions taken by somebody who may be unduly influencing an elderly person, but you're looking at the mental capacity of the person. Are they in a diminished capacity out of the case you talk about? So although these are separate cause of actions, all factors do become relevant, and it all really arises out of the same set of outward effects. You really don't just look at what the perpetrator did, but you look at the condition of the person, elderly, weak, feeble. Even in an undue influence case, that may have a factor. Or was it a young, vibrant person? One of the problems, I'm out of time. I'll just briefly sum up. I think one of the problems that the plaintiff had in this case is that this particular testator had a long-established testamentary plan. This was not a deathbed plan. This was a 13- or 14-year plan of disinheriting the plaintiff in this case. And they were stuck with the fact that not only did they claim that as an elderly person, there had been an undue influence that this had gone on for 13 or 14 years, and then they were stuck with what are they going to say about mental capacity? Are they going to argue mental capacity for 14 years? So they lumped them all together. But the bottom line, be that as it may, they're pleading, it's really the same operative facts in count three as in the other two counts. Thank you, Mr. Goldberg. Thank you, Your Honor. The biggest problem that the plaintiff had in this case was that his sister absolutely stonewalled every single aspect of the case. At the core were wills and or testamentary substitutes, trusts. She refused to show him anything. He didn't see the trusts until the suit was filed. So the pleadings necessarily were shocking pleadings. And I'm sure the Court understands what I'm saying when I say that. However, when we realized what the facts were, after we were into it for a couple of months, we took the count that dealt with mental capacity and in March of 14 dismissed it without prejudice. Prior to any proceedings that led to us coming to see you in the appellate court, it was rambling around in there, but it was gone. So the order that was entered here I characterize as a nullity. Now, unless you have any further questions, I really don't think anything that I can say can add to weight for me. I don't have any real dispute with what Mr. Cohen said about these cases. With respect, do you agree with his analysis of Richter and Ward? Do you have any dispute about the character of the orders in those cases as compared to the character of the order in this case? Only that they're old law and that the court in the Ward case specifically said that Hudson and Reiner no more, and the rumors in the cases really state the law in a more nuanced and broad way. All right. Thank you, Justice. Thank you, Mr. Cohen. The court thanks both parties for their arguments today. The case will be taken under advisement. A written decision will be issued in due course. Thank you.